IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CAHILL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-663 |
| | : | |
| BENSALEM TOWNSHIP POLICE | : | |
| DEPARTMENT, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                 **July 17, 2014**

      Pro se Plaintiff John Cahill brings this action seeking monetary damages pursuant to 42 U.S.C. § 1983 and Pennsylvania law against the Bensalem Township Police Department (the Department); Frederick Harran, the Department's director of public safety; and four John Doe police officers asserting claims for false imprisonment (Count I), intrusion upon seclusion (Count II), trespass to chattels (Count III), violations of his state and federal procedural due process rights (Count IV), violations of his state and federal rights to be free from unlawful search and seizure (Count V), and conspiracy (Count VI).  Cahill also asserts the same state tort claims and the conspiracy claim against Matthew Etzrodt, allegedly doing business as Motel Management Service, Inc., allegedly doing business as Neshaminy Inn (the Inn), and three "Desk Clerk Jane Doe" employees of the Inn (collectively, the Inn Defendants).[1]

      The Department and Harran and the Inn Defendants each filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, these Defendants' motions will be granted.  When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—

---

[1] Counts IV and V, the state and federal constitutional violations, are only asserted against the Department, Harran, and the John Doe officers.

even when the plaintiff does not request leave to do so—unless amendment would be inequitable or futile.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).  Because it is clear that amendment would be futile in this case, Cahill's claims will be dismissed with prejudice as to all Defendants except the four John Doe police officers.

FACTS[2]

On July 7, 2012, Cahill stayed overnight in a room at the Inn.  At around 10:30 a.m. the following morning, Cahill went to the check-in counter to pay for an additional night.  As he approached, Cahill saw police officers behind the counter interacting with the clerk and examining the Inn's paperwork.  Cahill then spoke to the clerk, presented identification, signed the register, paid for an additional night, and returned to his room.

Approximately forty-five minutes later, while Cahill was in his room with a woman referred to in the Amended Complaint as "K.M.," he heard a loud banging on the motel room door.  When Cahill answered the door, three police officers confronted him, demanding to know whether K.M. was in the room.  The officers stated there was a warrant for K.M.'s arrest, and proceeded to forcefully enter the room and knock Cahill off his feet without presenting the warrant.  Upon entering the room, the officers told Cahill to produce identification, but he refused, telling the officers to produce a warrant or leave.  In response, the officers forced Cahill onto the bed, handcuffed him, and left him prostrate.  Without Cahill's consent, the officers proceeded to search Cahill's person and pockets, removing and searching his wallet and confiscating his watch and other jewelry.  After obtaining Cahill's identification from his wallet, the officers checked for any outstanding warrants.  Finding none, the officers did not arrest

---

[2] The following facts are drawn from the allegations of Cahill's Amended Complaint, which this Court must accept as true in evaluating the instant motion to dismiss.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Cahill.  They arrested K.M. and removed her from the premises on a third-degree misdemeanor probation detainer from Lancaster County, Pennsylvania.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11.  The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### A.  Claims Against the Department, Harran, and the John Doe Police Officers

The claims against the Department pursuant to § 1983 will be dismissed with prejudice because local police departments are not "persons" who can be sued under that statute.  A police department is considered a subunit of the city government and not distinct from the government at large because the department is "merely a vehicle through which the city fulfills its policing functions." *Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993); *see also Talley v. Trautman*, No. 96-5190, 1997 WL 135705, at *2 (E.D. Pa. Mar. 13, 1997) (holding a municipal police department, without an identity separate from the municipality of which it is a part, does not constitute a natural or artificial person for purposes of a § 1983 action); *Irvin v. Borough of*

*Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996) (dismissing § 1983 claims against the Darby Police because "the police department is merely an arm of the local municipality"). Thus, Bensalem Township, not the Department, is the appropriate municipal defendant in this case.

Cahill did not name the Township as a defendant, and the Amended Complaint fails to state a claim against the Township for municipal liability in any event. "[A] municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). There are three circumstances under which a municipality may be liable: "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." *Id.*

Cahill does not set forth any facts relating to wrongdoing by Bensalem Township. His claim for municipal liability is predicated solely on the police officers' activities in reviewing the Inn's guest register, which he describes as a "systematic and familiar" interaction between the officers and the Inn Defendants that is a "patently observable and a well known custom throughout the community." Am. Compl. ¶¶ 40-41. Even assuming these allegations are sufficient to infer the existence of an official policy or practice, the officers' activities do not give rise to a cognizable constitutional violation because Cahill has no protected interest in the Inn's records. While the Third Circuit does not appear to have addressed the issue, other courts of appeals have rejected the suggestion that a hotel guest has any privacy interest in a hotel's records. *See United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000) (holding a guest has

4

no reasonable expectation of privacy in records held by the motel where he stayed); *United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985) (holding a guest has no standing to challenge the use of guest registration records by the police). Cahill has provided no reason to believe the Third Circuit would not reach the same conclusion, which flows from the United States Supreme Court's decision in *United States v. Miller*, in which the Court held a bank depositor had no protected interest in bank records because "the depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." 425 U.S. 435, 443 (1976).

Cahill's claims under Pennsylvania law against the Department are barred by the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. §§ 8541–8542. The PSTCA grants local government agencies immunity from liability for damages caused by agency employees, subject to eight specifically enumerated statutory exceptions. *See id.* § 8541.[3] Because Cahill's claims do not fall within one of the exceptions, the Township is immune from these claims, and the claims will be dismissed with prejudice.

Cahill also brings claims against Frederick Harran, the Department's director of public safety, in his official capacity pursuant to § 1983. Am. Compl. ¶ 6 ("Director Harran is named here only in his capacity as director."). These claims will also be dismissed with prejudice because they are viewed as claims against the Township. *See Ky. v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is

---

[3] The exceptions to the grant of immunity include claims relating to: (1) vehicle liability, (2) care, custody, or control of personal property, (3) real property, (4) trees, traffic controls, and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody, or control of animals. 42 Pa. Cons. Stat. § 8542.

5

the entity." (internal citations omitted)); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). As explained above, Cahill's claims against the Township fail and thus the claims against Harran will be dismissed with prejudice, as amendment would be futile.[4]

Cahill's state law claims against Harran fail because employees of local agencies are immune from suit for any acts performed within their scope of employment. 42 Pa. Cons. Stat. § 8545. This grant of immunity is abrogated only in cases where the "act of the employee caused the injury and . . . such act constituted a crime, actual fraud, actual malice or willful misconduct." *Id.* § 8550. Cahill does not allege that Harran caused any injury or acted with malice (or took any action for that matter), nor is there any other basis in the Amended Complaint to conclude that immunity does not apply to protect Harran from suit in these circumstances.

Cahill's claims against the John Doe police officers in their official capacity will be dismissed because, as explained above, a claim against an official in his official capacity is considered a claim against the entity, i.e., the Department. Because local police departments are not "persons" who can be sued under § 1983, *see Johnson*, 834 F. Supp. at 878-79, Cahill can only assert his official capacity claims against the municipality, i.e., Bensalem Township. The only allegations suggesting the officers acted pursuant to any sort of official government policy

---

[4] Even if Cahill were to amend the Complaint to assert a claim against Harran individually, it would also fail because the sole allegation concerning Harran is his status as Public Safety Director for Bensalem Township Police Department. The Amended Complaint is devoid of any allegations that Harran had any personal involvement in the alleged wrongdoing. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

or practice concern the officers' actions with respect to the Inn's guest register. As noted above, these actions do not provide grounds for liability. Because Cahill is not permitted to bring claims against the Township on a respondeat superior theory, his claims against the John Doe police officers in their official capacity will be dismissed with prejudice.

The Court declines, at this time, to dismiss Cahill's claims against the John Doe police officers in their individual capacity. The John Doe police officers did not move to dismiss the Amended Complaint, no attorney has entered an appearance on their behalf, and this Court cannot independently conclude from the pleadings that Cahill has no cognizable claims against the officers in connection with the events that transpired during K.M.'s arrest. While this Court recognizes the officers may have a meritorious qualified immunity defense with regard to the federal constitutional claims and a meritorious PSTCA defense with regard to the state tort claims, neither defense has been invoked at this time. Accordingly, the Court will direct the Department to provide Cahill with the identities of the John Doe police officers so that Cahill can further amend his complaint to name the police officers as defendants. Once the officers are properly within the case, they can decide on an appropriate response to Cahill's pleading, whether by answer or motion.

Cahill's claims arising under the Pennsylvania Constitution will, however, be dismissed as to the Department, Harran, and the John Doe police officers. Although the Pennsylvania Supreme Court has not addressed the issue, the weight of authority indicates that no private cause of action for damages exists for alleged violations of the Pennsylvania Constitution. *See Balletta v. Spadoni*, 47 A.3d 183, 193 (Pa. Commw. Ct. 2012) ("In short, there is no Pennsylvania state case law that permits an action for monetary damages based on a claimed violation of the state constitution."); *Jones v. City of Phila.*, 890 A.2d 1188, 1216 (Pa. Commw.

Ct. 2006) (holding cause of action for monetary damages for excessive force under Section 8 of the Pennsylvania Constitution is not available); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."). Because Cahill seeks only damages, he has no viable claim based on violations of the Pennsylvania Constitution. Thus, to the extent Counts IV and V assert claims for violations of the Pennsylvania Constitution, those claims will be dismissed with prejudice.

### B.  Claims Against the Inn Defendants

Cahill's only factual allegations implicating the Inn Defendants in any of his claims pertain to the Inn Defendants' decision to provide the police officers with access to the Inn's records, including the guest register. These actions do not implicate any of the Pennsylvania state law tort claims asserted by Cahill in Counts I-III. Plaintiff's false imprisonment, intrusion upon seclusion, and trespass to chattels (or conversion) claims are directed toward the police officers, since these claims depend on acts taken only by the officers.[5]

Cahill also asserts a conspiracy claim against the Inn Defendants, alleging they conspired with the police officers to "deprive Plaintiff of his natural rights, common law rights, statutory rights, and his state and federal constitutional rights." Am. Compl. ¶ 77. To state a claim for

---

[5] In his response to the Inn Defendants' motion to dismiss, Cahill denied that Counts I-III are directed solely toward the police defendants, but proceeded to state that the Inn Defendants conspired with the police defendants to examine the Inn's records without probable cause or a warrant, which constitutes an intrusion upon seclusion. Cahill's conspiracy claim (Count VI) is addressed below, but the intrusion upon seclusion claim against the Inn Defendants shares similar infirmities. There are no allegations suggesting the Inn Defendants intentionally intruded upon the seclusion of Cahill's private concerns for two reasons: (1) the Inn Defendants voluntarily reviewed their records (which were the Inn's, not Cahill's) with the police and (2) the police used the information received from the Inn's guest register to locate K.M., not Cahill.

conspiracy under § 1983 in these circumstances, a plaintiff must allege that private actors reached an agreement with state actors to deprive the plaintiff of a civil right.  *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993) (finding plaintiff "would be entitled to relief if [he] could show that [a private defendant] and at least one of the state actors named as defendants in [the] complaint somehow reached an understanding to deny [plaintiff] his rights under § 1983").

Here, the purported agreement to violate Cahill's civil rights was the information sharing that occurred between the Inn Defendants and the police officers.[6]  As set forth above, however, Cahill, as a guest of the Inn, has no privacy interest in the Inn's records that would prohibit their voluntary dissemination to the police.  Cahill therefore cannot show the Inn Defendants reached an agreement with the officers to violate Cahill's civil rights on this basis.  *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("[O]ne cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant.").  Moreover, even assuming the agreement to provide information regarding motel guests did violate a civil right, it is clear from the facts alleged that any agreement between the Inn Defendants and the police officers was to provide information regarding K.M., the person for whom the police officers were searching.  The police officers only incidentally encountered Cahill while executing an arrest warrant for K.M., further confirming the Inn Defendants did not conspire with the police officers to violate Cahill's civil rights.

Cahill also cannot state a claim for civil conspiracy under Pennsylvania law, which requires establishing that "two or more persons combined or agreed with intent to do an unlawful

---

[6] No reasonable reading of the Amended Complaint would allow the Court to plausibly infer that the Inn Defendants conspired or agreed to engage in the acts that allegedly occurred once the police officers entered the motel room in which Cahill and K.M. were staying.

act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).   Civil conspiracy under Pennsylvania law also requires establishing proof of malice, described as an intent to injure plaintiff.   *Id.*   As discussed above, the Inn's agreement to share information regarding its guest register was not unlawful, and the agreement to provide information regarding K.M. does not reflect an intent to injure Cahill. Because the pleadings reflect no unlawful acts taken by the Inn Defendants, all claims against those Defendants will be dismissed with prejudice.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.